UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARREN JARRELL McFADDEN,

Petitioner,

v.

KEN CLARK, Warden,

Respondent.

No.  2:18-cv-02448 TLN KJN (HC)

FINDINGS & RECOMMENDATIONS

I.  Introduction

Petitioner is a state prisoner, proceeding with counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2015 conviction for first degree murder and attempted murder.  Petitioner was sentenced to state prison for twenty-five years to life and life with the possibility of parole.  Petitioner claims that there was insufficient evidence to support his convictions.  After careful review of the record, this court concludes that the petition should be denied.

II.  Procedural History[1]

On December 17, 2014, a jury found petitioner guilty of first degree murder (Cal. Pen. Code, § 187(a) [count 1]) and attempted murder (Cal. Pen. Code, §664/187(a) [count 2]).  (LD 1

---

[1] Petitioner was tried along with co-defendant Danny Robert Louis Jeffreys.

at 296-98; LD 2 at 1232-33.)[2]  On August 17, 2015, petitioner was sentenced to state prison for twenty-five years to life on count 1 and to life with the possibility of parole on count 2.  (LD 1 at 345-46.)

Petitioner appealed the conviction to the California Court of Appeal, First Appellate District, Division Three.  (LD 1 at 347.)  On April 5, 2017, the Court of Appeal remanded the matter to allow petitioner the opportunity to preserve the record for an eventual youthful offender parole hearing, but otherwise affirmed the judgments of conviction.  (LD 3 at 142-54.)  A petition for rehearing was denied on April 25, 2017.  (See LD 3 at 156-71.)

Petitioner filed a petition for review in the California Supreme Court (LD 3 at 174-93), which was denied on June 14, 2017.  (LD 3 at 213.)

Petitioner filed the instant petition on September 6, 2018.  (ECF No. 1.)  Respondent filed its answer on February 7, 2019.  (ECF No. 12.)  Thereafter, petitioner filed a traverse on May 10, 2019.  (ECF No. 21.)

III.  Facts[3]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the First Appellate District, Division Three, provided the following factual and procedural summary:

> Defendants were charged with murder (Pen. Code, § 187, subd. (a)) and attempted premeditated murder (Pen. Code, §§ 187, subd. (a), 664). The information further alleged that Jeffreys personally and intentionally used and discharged a firearm during the commission of both offenses (Pen. Code, § 12022.53, subd. (c)).
>
> The following evidence was presented at defendants' joint trial.
>
> On April 11, 2014, shortly after 5:00 p.m., Fairfield police officers responded to a report of a shooting at the Grande Circle apartment complex. Officers found a man bleeding and not responsive, who was transported to a hospital and later died as a result of his gunshot wounds. A second shooting victim, the dead man's brother, left the

---

[2] "LD" refers to the documents lodged with this court by respondent on February 7, 2019.  The specific page references are to those assigned by the court's CM/ECF system.

[3]  The facts are taken from the opinion of the California Court of Appeal for the First Appellate District, Division Three, in People v. McFadden & Jeffreys, Nos. A146219/A146221, filed April 5, 2017, a copy of which was lodged by respondent on February 7, 2019.

scene after the police officers arrived and drove himself to the hospital. He had been shot once in his right leg.

Officers found casings from three guns near the crime scene. Casings from a .25–caliber gun were found near the area where the murder victim fell and nine-millimeter casings and .40–caliber casings were found in the parking lot across the street.

The prosecution pieced together the events leading to the shooting and immediately thereafter through testimony of witnesses and surveillance camera video recordings. Because of the number of individuals involved and the irregular curvature of the streets and adjacent parking lot, the prosecution made extensive use of an exhibit depicting the street layout and the locations shown on the videos, which undoubtedly was essential to a proper understanding of the testimony and collection of video clips.

Trayvon Wayfer was at the Grande Circle apartment complex when the shooting occurred. He testified that at around 5:00 p.m., he, Timothy Mitchell and the two defendants met Donald Hill at the complex.[Fn. omitted.]  McFadden had driven to the complex in his black Lexus and Wayfer had driven to the complex in a Cadillac, which had handicapped license plates.

Wayfer was wearing a white T-shirt, white pants, a peach hoodie, and peach colored shoes. Jeffreys wore a blue Cal Berkeley sweatshirt. Mitchell was dressed in all black. Wayfer did not recall what McFadden wore that day.

Wayfer testified that shortly before the shooting, Jeffreys left the group and entered the apartment complex. Wayfer did not know where Jeffreys was at the time of the shooting. Just prior to the shooting, Mitchell borrowed Wayfer's peach sweatshirt and then also walked away from the group.

The prosecution called as a witness a forensic image analyst who had prepared a series of video clips that were presented at trial. The video recordings came from security cameras operated by the apartment complex and one camera operated by the city. In preparing the clips for trial, he enhanced some of the video recordings to correct for overexposure, enlarged some portions, and added markings on some clips, such as a circle or a spotlight effect to draw the viewer's attention to a particular part of the image. He did not add any content to the videos.

Video recovered from the city camera shows a group of men, including the two victims, standing in the street, then running away from the nearby parking lot when the shooting starts and, finally, one victim falling after being shot in the back. The same video appears to show one of the men, dressed in all black, shooting across the street towards the parking lot.

Other video clips show Wayfer, Mitchell, McFadden and Jeffreys arriving at the complex, getting out of the two cars and congregating on a corner. Hill is with them on the corner. Before the clip ends,

3

Jeffreys can be seen walking away from the group. Later, a clip shows Mitchell putting on Wayfer's peach sweatshirt. Then Hill can be seen handing Mitchell what appears to be a gun. McFadden appears to be watching the transaction. Wayfer is standing with the group but at trial he denied seeing Hill hand Mitchell anything. The video shows Mitchell, after taking what looked like a gun from Hill, crossing the street. In a different clip, a man who appears to be wearing a peach sweatshirt can be seen walking behind a fence toward the parking lot from which the shots were fired. The same video shows what looks like multiple flashes coming from behind the fence by the parking lot. A man in blue can also be seen moving behind the same fence. After the shots were fired, the man in the peach sweatshirt can be seen through the fence running away from the parking lot and then crashing over some bushes. Finally, a clip shows Mitchell and Hill getting into McFadden's Lexus after the shooting. Hill remained in the car for less than a minute and then exited before Mitchell and McFadden drive away.

Wayfer testified that he heard gunshots but could not see who fired them. He confirmed that he saw the shots come from the parking lot. He also saw someone who was with the victims shooting as well. When the shooting started, he went to his car and drove away. Video shows Wayfer and McFadden moving in a slow jog towards their cars and briefly conversing before Wayfer backs out of the lot. Wayfer claimed at trial that he left without Mitchell and Jeffreys because he was afraid for his life. Wayfer called Jeffreys and Mitchell seconds after he left and coordinated where to pick them up. Wayfer picked up Mitchell from McFadden's car a few minutes after the shooting. Wayfer picked up Jeffreys a few blocks away. Jeffreys was still wearing the Cal Berkeley sweatshirt.

A neighbor testified that she looked out her window when she heard popping sounds. She saw a man wearing a blue hoodie with his left hand raised and pointing across the street. When she heard more popping noises, she realized the man was shooting although she did not see a gun. After the shooting, the man in the blue hoodie ran between a fence and an apartment building. The man never turned around and she never saw his face. She also did not see the front of the man's blue hoodie.

Two additional witnesses testified that they were near the apartment complex when they heard the gunshots. One witness testified that seconds after she heard the gunshots, a man jumped over the fence that separated her neighborhood from the apartment complex. The man wore a blue hoodie and he walked at a fast pace. The man had a phone up to his face. The other witness testified that he saw a man wearing a blue "U.C. Berkeley" sweatshirt coming from behind the apartment complex fence. The man was talking on his cell phone when he passed. The man started jogging, then switched to a walk, and then proceeded to run until he was out of sight. Thirty seconds after that, a Cadillac with handicapped plates drove by.

After the crime, Jeffreys went to visit his mother in Tennessee. According to the police officer who interviewed his mother, Jeffreys told his mother that he was present at the apartment complex at the

time of the shooting. Jeffreys also told his mother that he had a gun, but he "handed the gun off before he went around the corner of the building." In a second interview with the same officer, Jeffreys' mother denied making any such statement to the police.

Defendants were found guilty as charged. Defendants were sentenced to a term of 25 years to life for the murder conviction plus an additional consecutive life term with the possibility of parole for the attempted murder conviction. Jeffreys was also sentenced to two additional consecutive 20–year terms for his use of a firearm.

(People v. McFadden, slip op. at *1-3.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining

5

1   what law is clearly established and whether a state court applied that law unreasonably." Stanley,

2   633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

3   precedent may not be "used to refine or sharpen a general principle of Supreme Court

4   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall

5   v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per

6   curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted

7   among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as

8   correct. Id.  Further, where courts of appeals have diverged in their treatment of an issue, it

9   cannot be said that there is "clearly established Federal law" governing that issue. Carey v.

10  Musladin, 549 U.S. 70, 77 (2006).

11         A state court decision is "contrary to" clearly established federal law if it applies a rule

12  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

13  precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

14  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

15  writ if the state court identifies the correct governing legal principle from the Supreme Court's

16  decisions, but unreasonably applies that principle to the facts of the prisoner's case. [4] Lockyer v.

17  Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d

18  997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply

19  because that court concludes in its independent judgment that the relevant state-court decision

20  applied clearly established federal law erroneously or incorrectly.  Rather, that application must

21  also be unreasonable." Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550

22  U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its

23  'independent review of the legal question,' is left with a '"firm conviction"' that the state court

24  was '"erroneous"'").  "A state court's determination that a claim lacks merit precludes federal

25  habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

26  _____

27  [4]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28  384 F.3d 628, 638 (9th Cir. 2004)).

decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98. If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Id. at 101.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V.  Petitioner's Claims

*Sufficiency of the Evidence*

Petitioner claims that he was denied due process because his convictions are not supported by sufficient evidence.  (ECF No. 1 at 4-6 & 1-1 at 16-26.)

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the First Appellate District, Division Three, on petitioner's direct appeal.  The state

court addressed this claim as follows:

> McFadden argues that the prosecution failed to prove anything beyond the fact that he was present at the scene and was an accessory after the fact. We disagree. Although the evidence was such that the jury might have found otherwise, the evidence was sufficient to support the finding that McFadden had agreed to act as a getaway driver for the planned shooting and was thus an aider and abettor of the crime.

> The evidence regarding McFadden's conduct is as follows: Wayfer testified that McFadden was at his house with Jeffreys and Mitchell before they traveled together to the complex to meet Hill. After parking and walking part way through the parking lot, McFadden returned to his car briefly. The video evidence establishes that Jeffreys left the area where the group had congregated before McFadden arrived. McFadden was present and appeared to be looking towards Hill when Hill handed a gun to Mitchell. When Mitchell headed across the street with the gun, McFadden backed a few feet away from the group towards an entrance to an apartment building. When the shooting started, McFadden jumped behind a wall and peaked out several times toward where the shooting was taking place. After the shooting stopped, he and Wayfer returned to the cars. After exchanging a few words, Wayfer got into his car and backed out of the parking lot. McFadden sat looking back towards the area of the shooting for a few seconds before starting to back out of his parking space. He paused for another few seconds before Mitchell and then Hill jogged towards his car. Hill got in and out of the car before McFadden drove away. It is a reasonable inference from the way McFadden positioned himself next to the building that he knew the shooting was about to occur. Likewise, contrary to his argument on appeal, his conduct once he returned to his car can be characterized fairly as waiting and looking for his codefendants. As the prosecutor argues, this sequence of events supports the reasonable inference that McFadden was the prearranged getaway driver for Mitchell.

(People v. McFadden, slip op. at *3-4.)

<u>Applicable Legal Standards</u>

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  Thus, one who alleges that the evidence introduced at trial was insufficient to support the jury's findings states a

1   cognizable federal habeas claim.  <u>Herrera v. Collins</u>, 506 U.S. 390, 401-02 (1993).  Nevertheless,

2   the petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to

3   obtain a state conviction on federal due process grounds."  <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274

4   (9th Cir. 2005).  On direct review, a state court must determine whether "any rational trier of fact

5   could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v.</u>

6   <u>Virginia</u>, 443 U.S. 307, 319 (1979).  Federal habeas relief is available only if the state court

7   determination that the evidence was sufficient to support a conviction was an "objectively

8   unreasonable" application of Jackson.  <u>Juan H.</u>, 408 F.3d at 1275 n.13.

9       Habeas claims based upon alleged insufficient evidence therefore "face a high bar in

10  federal habeas proceedings because they are subject to two layers of judicial deference."

11  <u>Coleman v. Johnson</u>, 566 U.S. 650, 651 (2012) (per curiam).  As noted by the Supreme Court:

12
13
14
15
16
> First, on direct appeal, "it is the responsibility of the jury−not the court−to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

17  <u>Id.</u> (citations omitted).

18      The <u>Jackson</u> standard "must be applied with explicit reference to the substantive elements

19  of the criminal offense as defined by state law."  <u>Jackson</u>, 443 U.S. at 324 n.16.  In performing a

20  <u>Jackson</u> analysis, a jury's credibility determinations are "entitled to near-total deference."  <u>Bruce</u>

21  <u>v. Terhune</u>, 376 F.3d 950, 957 (9th Cir. 2004).  When the factual record supports conflicting

22  inferences, the federal court must presume that the trier of fact resolved the conflicts in favor of

23  the prosecution, and must defer to that resolution.  <u>Jackson</u>, 443 U.S. at 326.

24  ////

25  ////

26  ////

27  ////

28  ////

1          Analysis[5]

2          A review of the record, and of the evidence submitted at trial, reveals there is sufficient

3    evidence to support petitioner's convictions.

4          Trayvon Wayfer testified that a group including petitioner had been at his home for about

5    an hour or two prior to the group departing for Grand Circle to visit Hill.  (LD 2 at 582-84, 631-

6    32.)  Wayfer drove his Cadillac and was accompanied by Mitchell and Jeffreys; petitioner drove

7    separately in his Lexus.  (LD 2 at 584-85, 673-74.)  Both vehicles are seen arriving in the area

8    and parking next to one another.  (ECF No. 17; see also LD 2 at 596-98.)  Wayfer, Mitchell and

9    Jeffreys walk together toward the mailbox area; they are eventually joined by petitioner.  (ECF

10   No. 17; see also LD 2 at 603-05, 626, 669.)  More particularly, and despite Wayfer's testimony to

11   the contrary (LD 2 at 632, 637, 672), there was sufficient evidence to support the reasonable

12   inference that petitioner aided and abetted Terean Berry's murder and the attempted murder of

13   Trent Berry where a reasonable factfinder could conclude from the video evidence submitted at

14   trial, as People's Exhibit Number 55, that petitioner was aware that a shooting was about to take

15   place.  (ECF No. 17.)  Petitioner is present and watchful when Mitchell takes a sweatshirt from

16   Wayfer, puts it on, and then takes what appears to be a gun offered by Hill, before crossing the

17   street in the direction of the victims.  (ECF No. 17; see also LD 2 at 597, 613-14, 627-29.)

18   Jeffreys had already walked off.  The remaining group members, including petitioner, watch the

19   area across the street for several moments, as if anticipating an action that will require their

20   retreat.  (ECF No. 17.)  Before long, those still present do in fact retreat, including petitioner.

21   (ECF No. 17; see also LD 2 at 618, 676.)  And, before leaving the area of Grande Circle in his

22   own car, petitioner waits for Mitchell to get to his car, allows Hill to retrieve something

23   apparently from Mitchell, and eventually departs with Mitchell as a passenger.  (ECF No. 17.)

24   Meanwhile, Wayfer, who left alone in his Cadillac, called Jeffreys' phone and eventually picked

25   _____

[5] To the extent that the state appellate court opinion does not expressly cite the Jackson v.
26   Virginia standard in analyzing the sufficiency claims herein, it must be noted that, long ago, the
     California Supreme Court expressly adopted the federal Jackson standard for sufficiency claims
27   in state criminal proceedings.  People v. Johnson, 26 Cal.3d 557, 576 (1980).  Accordingly, the
     state court applied the correct legal standard, and this court's only task is to determine whether
28   the state court adjudication was contrary to or an unreasonable application of that standard.

1    him up; Mitchell had already moved from petitioner's car to Wayfer's car.  (LD 2 at 619-20, 656-

2    57, 677-78, 680.)  Wayfer, Jeffreys and Mitchell then all traveled to Vallejo and spent hours with

3    Wayfer's family.  (LD 2 at 620-21.)

4            It can reasonably be inferred from the above that petitioner was aware there would be an

5    incident at Grande Circle.  He was with Wayfer, Jeffreys and Mitchell – the latter two being the

6    alleged shooters – for at least an hour beforehand.  Moreover, two separate vehicles were taken to

7    transport the group of four men and it can be reasonably inferred two vehicles were needed in

8    order to retrieve or pick up the two separate shooters.  Petitioner's actions immediately prior to,

9    during, and after the shooting further support the inferences that petitioner was aware of and

10   assisted those directly responsible for the shooting incident.

11           Under Jackson, this court's role is simply to determine whether there is any evidence, if

12   accepted as credible by the trier of fact, sufficient to sustain conviction.  Schlup v. Delo, 513 U.S.

13   298, 330 (1995).  The United States Supreme Court has recently even further limited a federal

14   court's scope of review under Jackson, holding that "a reviewing court may set aside the jury's

15   verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed

16   with the jury."  Cavazos v. Smith, 565 U.S. 1, 2 (2011) (per curiam).  Jackson "makes clear that it

17   is the responsibility of the jury—not the court—to decide what conclusions should be drawn from

18   evidence admitted at trial."  Id. at 2.

19           Here, the undersigned finds no basis upon which to set aside the jury's verdict.  It was the

20   jury's responsibility to decide what conclusions should be drawn from the evidence heard and

21   admitted at trial.  Cavazos v. Smith, 565 U.S. at 2.  The jury was instructed that it was free to

22   believe all, some, or none of Wayfer's testimony.  (LD 2 at 1081.)  And, the jury's credibility

23   determinations in that regard are entitled to near total deference.  Bruce v. Terhune, 376 F.3d at

24   957.  As discussed above, there was sufficient evidence to permit a rational trier of fact to agree

25   with the jury's finding in this case that petitioner was guilty of first degree murder and attempted

26   murder on an aiding and abetting theory.  Cavazos v. Smith, at 2.  The state court's determination

27   was in no way objectively unreasonable.  Coleman v. Johnson, 566 U.S. at 651.

28   ////

1    In sum, the state court's decision was not contrary to, or an unreasonable application of,

2 clearly established Supreme Court authority.  Although it might have been possible to draw a

3 different inference from the totality of the evidence, the undersigned and this court are required to

4 resolve that conflict in favor of the prosecution.  See Jackson, 443 U.S. at 326.  Thus, considering

5 the deference owed under Jackson, Coleman, Cavazos, and the AEDPA, the undersigned

6 concludes that there was sufficient evidence introduced at trial from which a rational trier of fact

7 could have found beyond a reasonable doubt that petitioner was guilty of the first-degree murder

8 of Terean Berry and attempted murder of Trent Berry on an aiding and abetting theory.  Petitioner

9 is therefore not entitled to relief on his insufficiency of the evidence claim and it is recommended

10 the claim be denied.

11 VI.  Conclusion

12    Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

13 habeas corpus be denied.

14    These findings and recommendations are submitted to the United States District Judge

15 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

16 after being served with these findings and recommendations, any party may file written

17 objections with the court and serve a copy on all parties.  Such a document should be captioned

18 "Objections to Magistrate Judge's Findings and Recommendations."   If petitioner files

19 objections, he shall also address whether a certificate of appealability should issue and, if so, why

20 and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if

21 the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

22 § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

23 service of the objections.  The parties are advised that failure to file objections within the

24 specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

25 F.2d 1153, 1157 (9th Cir. 1991).

26 Dated:  March 4, 2021

27 mcfa2448.157

28

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

1